DeHaven *et al. v.* DeHaven *et al.*

No. 7896.

DeHaven et al. *v.* DeHaven et al.

SUPREME COURT. — *Voluntary Appearance.* — *Submission.* — *Dismissal.* — *Waiver.* — *Practice.* — After defendants have declined to join in an appeal, and have been made appellees, and have by counsel appeared in the Supreme Court and confessed error, and the cause has been submitted by agreement, it is too late for a co-appellee to move to dismiss the appeal for want of notice by appellants to their co-defendants.

EVIDENCE. — *Hearsay.* — *Pedigree.* — *Declarations of Ancestor.* — *Cross-Examination.* — Declarations concerning pedigree constitute a marked exception to the rule excluding hearsay evidence. The acts and declarations of an ancestor, as to his treatment of the person whose pedigree is in dispute, are an entirety, and, when particular instances are called forth upon direct examination, the general conduct of such ancestor may be proved on cross-examination.

SAME. — On such cross-examination, it is not error to refuse to permit a witness to answer a question which calls for a statement made by the ancestor while testifying as a witness in an action affecting his personal interests, and concerning the pedigree of a person who had been many years dead.

SAME. — Proof of pedigree is restricted to the declarations of deceased persons who were related by blood or marriage to the person whose parentage is the subject of investigation.

SAME. — Pedigree can not be established by proving what the neighbors thought or said upon the subject of the paternity of the person whose pedigree is in dispute.

SAME. — *Leading Question.* — *Witness.* — A question which merely mentions the subject to which the witness is desired to direct his answer is not leading. It is impossible to examine a witness without referring to or suggesting the subject upon which he is to answer.

From the Fayette Circuit Court.

*B. F. Claypool* and *J. H. Claypool,* for appellants.

*W. Morrow, N. Trusler, R. Conner, W. C. Forrey* and *C. Roehl,* for appellees.

ELLIOTT, C. J. — Nancy A. DeHaven and Christopher De-Haven, her husband, instituted this action against the appellants, Jacob DeHaven and James T. DeHaven, and five others. The appellants alone appeal, and have made those who

DeHaven *et al.* *v.* DeHaven *et al.*

were their co-defendants in the court below, appellees, but have served no notice of the appeal upon them. The appellees, named as defendants below, and who did not join in the appeal, here appear and by counsel confess error. The appellee Nancy A. DeHaven has moved to dismiss the appeal upon the ground that no notice was given by appellants to those who were their co-defendants in the trial court. We think the motion is not well taken. The voluntary appearance of the parties who were co-defendants below has brought them into court quite as effectually as a notice to them could have done. Of course their confession of error can not prejudice the rights of the appellee Nancy DeHaven. The parties affected by the appeal are all in court and their rights can be fully determined. The appellee is not injured by the manner in which her co-defendants have appeared in this court. The manner of appearance and the course here pursued, whether commendable or censurable, do the appellee no possible harm.

The motion to dismiss comes too late. The cause was submitted by agreement before the motion was filed, and such a submission is a waiver of motions like that under mention. *Truman* v. *Scott*, 72 Ind. 258.

The issue made by the pleadings in this case was, whether Nancy DeHaven was an heir of Isaac DeHaven, deceased, and as such entitled to a distributive portion of his estate.

The appellants ask a reversal upon the ground that a new trial was erroneously denied them. The questions argued by counsel all arise upon the rulings admitting and excluding testimony.

The appellants propounded to one Tyner upon cross-examination this question: "State whether or not you heard Isaac DeHaven state under oath on the trial of a cause entitled Nancy A. DeHaven and others *v.* Jacob DeHaven and others, in the Fayette Circuit Court in 1875, that Betty was not his child, and that she was born before he and his wife

were married." This witness had testified upon his examination in chief by the appellee who had called him, that he had known Isaac DeHaven in his lifetime, that he had often visited the family of said Isaac, that he had heard the family call the mother of appellee Betsey DeHaven, that said Isaac spoke of her as my Betsey the same as he spoke of his other children, as my William, etc. The statement called for by the appellants' question was made, if made at all, long after the death of the mother of the appellee and after a controversy had arisen affecting the interests of the ancestor Isaac DeHaven. We think that there was no error in refusing to permit this question to be answered, for the reason that it called for a statement concerning the pedigree of a person who had been many years dead, and made by one testifying as a witness in an action which affected his personal interests.

The appellants upon cross-examination asked the witness, Tyner, the following question : "State whether or not, during the earlier and later period of his life, you heard him, Isaac DeHaven, make any other statements or expressions in regard to the parentage of Betsy, other than you have given upon your original examination?" The declarations of Isaac DeHaven, the ancestor, were called out upon appellee's direct examination for the purpose of proving the parentage of her mother, and were properly admitted ; for declarations concerning pedigree constitute a marked and important exception to the rule excluding hearsay evidence. The declarations are admitted upon the theory that they tend to show that the person to whom they refer was recognized and treated as one of a family. The statements of an ancestor or deceased kinsman are not to be regarded as separate and distinct conversations, constituting in themselves independent subjects of investigation, but they are to be taken as a connected and indivisible thing indicating the treatment of the person whose pedigree is in dispute. The

acts and declarations of the deceased kinsman are an entirety, and the question is, not simply what he said or did on one day, or within one week, but what was his general line of conduct. The subject-matter, which the appellee by her direct examination laid open for investigation, was the manner of the deceased kinsman's treatment of her mother, and not simply what such kinsman said or did on this or that particular day. In entering upon this general subject, the appellee opened for examination a wide field, that of the general conduct of such deceased ancestor, and did not merely expose a spot here and there as particular days or instances were selected by her counsel. The question was proper, and the court erred in refusing to permit it to be answered.

It is true, as appellee's counsel assert, that the English rule respecting cross-examinations has been modified by the courts of this country, and that a cross-examination must, under the American rule, be confined to the subject-matter of the examination in chief. Subject-matter is not, however, to be given such a narrow and restricted meaning as that ascribed to it by counsel. Facts and circumstances connected with the subject may be asked for and called out upon cross-examination, and the cross-examining party can not be restricted to mere parts of a general and continuous subject which constitute a unity.

The appellants complain of the ruling of the court refusing to allow them to prove "what the common reputation was in the neighborhood in which they, the parents of the mother of appellee, lived, in relation to who was the father of appellee's mother." We think this complaint is groundless. Parties can not establish pedigree by proving what the neighbors thought or said upon the subject of the paternity of the person whose pedigree is in dispute. Proof of pedigree is restricted to the declarations of deceased persons who were related by blood or marriage to the person whose

parentage is the subject of investigation.   1 Greenleaf Evidence, sec. 103.

Appellants propounded to one of their witnesses this question : "State what you know, if anything, about your father ever recognizing Betsy, that afterward married Davis, and afterward Hamilton, as his child?" Appellee insists that her objection was properly sustained because the question is leading. This is the only ground of objection suggested, and if the question is not justly subject to the objection stated, and we see no other even plausible ground of objection, the court erred in refusing to permit it to be answered. Leading questions, says an English author, are "questions which suggest to the witness the answer desired, or which, embodying a material fact, admit of a conclusive answer by a simple negative or affirmative." 2 Taylor Evidence, sec. 1,262 *a*. Prof. Greenleaf's definition is substantially the same as that. given by the author quoted. 1 Greenleaf Evidence, sec. 434.

It is certain that the question does not assume any material fact so as to elicit a mere affirmative or negative answer. A simple negative or affirmative would in truth be no answer at all. The investigation, therefore, is narrowed to the inquiry whether the question does suggest the answer desired. There is nothing suggesting an answer, for there is no hint. or intimation of the answer desired or expected. The mention of the subject to which the witness is desired to direct his answer can not be regarded as making any suggestion as to what the answer shall be. In *Harvey* v. *Osborn*, 55 Ind. 535, the third question was : "State what you may know, if anything, of any indebtedness of Squire Harvey, one of the defendants, to William Osborn, the other of the defendants, named in this case, on or about the year 1867?" Of this question the court said : "Ordinarily, a 'leading question' is one, that, by its terms, suggests to the witness the answer he is expected to make, and leads him to make such answer. This third question was certainly not a leading question," as

calling the witness' attention to the subject upon which he is desired to give testimony is entirely proper, and, in truth, is necessary, in order that the examination may be confined to matters within the issues. As was said by Lord LANGDALE, in *Lincoln* v. *Wright*, 4 Beav. 166, "It is impossible to examine a witness without referring to, or suggesting the subject upon which he is to answer."

Judgment reversed.