Laura C. BONADIES, Mary T. Bonadies
and Timothy M. Bonadies,
Appellants–Plaintiffs,

v.

Hendrica E. SISK, M.D.,
Appellee–Defendant.

No. 71A03–9703–CV–87.

Court of Appeals of Indiana.

Feb. 24, 1998.

Thomas H. Singer, Carmen M. Piasecki, South Bend, for Appellants–Plaintiffs.

Edward A. Chapleau, South Bend, for Appellee–Defendant.

## OPINION

STATON, Judge.

In this medical malpractice action, Laura C. Bonadies and her parents, Mary T. Bonadies and Timothy M. Bonadies, appeal the

Deed was found to convey an easement, the First Deed should be construed to only convey an    easement.

trial court's judgment entered on a jury verdict in favor of Dr. Hendrica E. Sisk. The single issue presented for our review is whether a party called as a witness by the opposing party may be cross-examined using leading questions.

We affirm.

Before entering the sixth grade in the Fall of 1991, eleven-year-old Laura C. Bonadies was re-vaccinated for measles, mumps and rubella (MMR) in a single injection. Soon thereafter, she developed pain in her toe followed by pain and swelling in other areas. Laura was diagnosed as having juvenile rheumatoid arthritis, an autoimmune disease from which she is not expected to recover.

The Bonadieses contend that Dr. Sisk negligently permitted Laura to be vaccinated with the MMR vaccine against the specific wishes of Laura's mother who, because of a family history of autoimmune disease, had allegedly requested that Laura receive the measles portion of the vaccine only. The Bonadieses further allege Dr. Sisk's negligence in giving Laura the MMR vaccine caused Laura's juvenile rheumatoid arthritis.

During the jury trial, the Bonadieses summoned Dr. Sisk to the stand and examined her as their witness. Thereafter, they moved that Dr. Sisk's own counsel not be permitted to cross-examine his client with leading questions but, instead, that he examine her as if on direct examination. The trial court denied the motion stating that cross-examination by leading questions is the risk that the Bonadieses took when they called an adverse party to the stand. The jury found in favor of Dr. Sisk. The Bonadieses now appeal.

■ The scope, extent, method and manner of cross-examination rest primarily in the sound discretion of the trial court. *Sowders v. Murray*, 151 Ind.App. 518, 524, 280 N.E.2d

630, 634 (1972), *reh. denied, trans. denied.* Accordingly, in its sound discretion, a trial court may permit the use of leading questions.[1] *Corbin v. State*, 563 N.E.2d 86, 93 (Ind.1990). We do not reverse on the ground that leading questions were permitted unless the appellant makes it clearly apparent that there was an abuse of discretion that did substantial injustice. *Webster v. State*, 206 Ind. 431, 436, 190 N.E. 52, 54 (1934); *see also Garrison v. State*, 589 N.E.2d 1156, 1158 (Ind.1992); *Allen v. State*, 518 N.E.2d 800, 804 (Ind.1988); *Sierp v. Vogel*, 592 N.E.2d 1253, 1255 (Ind.Ct.App.1992), *trans. denied; The Pelican, Inc. v. Downey*, 567 N.E.2d 847, 849 (Ind.Ct.App.1991), *trans. denied.*

Here, the Bonadieses claim that they were denied a fair trial because the trial court permitted defense counsel to ask leading questions of his own client on the issue of causation. The Bonadieses insist that counsel should not have been permitted to introduce testimony on a material issue through use of leading questions because, even though defense counsel was technically cross-examining Dr. Sisk, it was cross-examination in form only, not in substance.

To support their argument, the Bonadieses direct us to the following provision of Indiana Evidence Rule 611:

> **(c) Leading Questions.** Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony. *Ordinarily*, leading questions should be permitted on cross–examination. Whenever a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Ind.Evidence Rule 611(c) (emphasis added). The Bonadieses cite the advisory committee notes to the nearly identical federal rule,[2] which provide in pertinent part:

---

**1.** A leading question has been variously defined as one that

"suggests to the witness the answer desired", *Snyder v. Snyder* (1875), 50 Ind. 492, at 494; 3 Wigmore, Evidence (Chadbourn Rev.1970), § 769, at 155; "indicates to the witness the real or supposed fact which the examiner expects and desires to have confirmed by the answer", 4 Jones on Evidence (6th Ed.1972), § 24:11, at 93; is in the form of an assertion of fact, *Cook v. State* (1921), 191 Ind. 412, 133

N.E. 137; or which, embodying a material fact, admits of a conclusive answer in the form of a simple "yes" or "no." *DeHaven et al. v. DeHaven et al.* (1881), 77 Ind. 236.

*Starks v. State*, 163 Ind.App. 639, 641, 325 N.E.2d 855, 857 (1975), *reh. denied, trans. denied.*

**2.** Federal Rule of Evidence 611(c) states:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordi-

The purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent. . . .

Fed R. Evid. 611(c) Notes of Advisory Committee on Proposed Rules.

■ Our resolution of this case is facilitated by Indiana Trial Rule 43(B), which has no federal counterpart.[3] It reads:

A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party . . . and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief.

Ind.Trial Rule 43(B). The comments to Rule 43(B), while not binding on this court, provide the following guidance:

It should be noticed that when such party or person is called *he may be subjected to leading questions and impeachment by both sides,* but may be cross-examined only upon the subject matter of the examination in chief. This substantially restates prior Indiana law allowing the right of a party to impeach his own witness where the testimony was prejudicial to him.

Civil Code Study Commission Comments, as reported in WILLIAM F. HARVEY, RULES OF PROCEDURE ANNOTATED, 3 INDIANA PRACTICE, at 201 (1988) (emphasis added). Thus, in Indiana, the trial court's decision to allow leading questions by both parties when the adverse party is called as a witness is a matter within the court's traditional discre-

tion in controlling the manner of interrogation.

However, this does not mean that the unbridled use of leading questions is permitted as a matter of right. We recognize that, while leading questions are generally an integral part of the cross-examination process, when an adverse party is called as a witness by the opponent, roles are reversed. In this situation, there is great danger that leading questions on cross-examination will be substituted for the witness's thoughts and language as to material facts in dispute. *See* ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE, 13 INDIANA PRACTICE § 611.302, at 215–16 (1995); *see also* Annotation, *Cross-examination by Leading Questions of Witness Friendly To or Biased in Favor of Cross-examiner,* 38 A.L.R.2d 952, 954 (1954) (most courts have refused to permit leading questions on cross-examination where adverse party has been called as witness by opponent). As pointed out by Professor Harvey, "Usually, leading one's own client is undesirable, and the court presumably would exercise its discretion to prevent the client who had been called first by the other side from parroting words put in his mouth by his lawyer." HARVEY, *supra,* § 43.3, at 205.

■ We now turn to the facts of this case. On direct examination of Dr. Sisk, the Bonadieses focused largely on the causation element of this cause of action.[4] They asked Dr. Sisk what would have happened to Laura if she had never received the MMR vaccine. Dr. Sisk answered, "That is a huge question that is open for major discussion for the rest of this trial, and I think that's a phenomenal conclusion to jump to." Record at 223. The Bonadieses also elicited testimony from Dr. Sisk regarding her completion of a "Vaccine Experience Report" which was sent to the laboratory that manufactured the MMR vaccine. On the form, Dr. Sisk was asked to identify the appropriate adverse event, and

---

narily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

**3.** With enactment of the Federal Rules of Evidence in 1972, Federal Rule 43(b), Scope of Examination and Cross–Examination, was abro-

gated by more specific provisions in the Federal Rules of Evidence, including Rule 611, Mode and Order of Interrogation and Presentation. WILLIAM F. HARVEY, RULES OF PROCEDURE ANNOTATED, 3 INDIANA PRACTICE § 43.1, at 204 (1988).

**4.** The jury returned a general verdict, and it is possible that the jurors found in favor of Dr. Sisk on other grounds.

she placed an "x" in the box labeled "RESULT- ED IN PERMANENT DISABILITY" after which she wrote "severe JRA [juvenile rheumatoid arthritis]." Plaintiff's Exhibit 5, Appendix, Brief of Appellant. Dr. Sisk explained that the adverse event was "alleged" and the Bonadiases acknowledged that Dr. Sisk's completion of the form did not mean she was "making an admission of some sort." Record at 230, 233. Dr. Sisk also testified regarding an expert's opinion that, while the MMR vaccine might have triggered Laura's rheumatoid arthritis, an upper respiratory infection, such as a cold, or trauma may have precipitated the disease.

■ A reading of the challenged leading questions presented on cross-examination shows that they address causation and, in the main, summarize that part of Dr. Sisk's testimony demonstrating the lack of scientific evidence linking the MMR vaccine and rheumatoid arthritis. As such, the subject of the leading questions was limited to the scope of the direct examination. We cannot say that permitting these questions was beyond the trial court's discretion.

Even if the court would have better exercised its discretion by disallowing the leading questions, the questions and answers did not unduly prejudice the Bonadieses. Dr. Sisk could have given similar information during her case in chief. Furthermore, medical experts corroborated Dr. Sisk's testimony concerning other factors that could have precipitated the rheumatoid arthritis and the lack of scientific evidence linking it to the MMR vaccine.

The Bonadieses have not shown that the jury was improperly influenced by the use of leading questions during the cross-examination of Dr. Sisk. We find no abuse of discretion in this manner of questioning that justifies a reversal.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.