**Jose SADA, Appellant–Petitioner,**

**v.**

**STATE of Indiana, Appellee–Respondent.**

No. 49A02–9802–PC–163.

Court of Appeals of ·Indiana.

Feb. 17, 1999.

---

7. In mathematical terms, this constitutes the "mode."

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, K.C. Norwalk, Deputy Attorney General, Indianapolis, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Jose Sada appeals the denial of his petition for post-conviction relief challenging his conviction of Dealing in Cocaine and Conspiracy to Deal in Cocaine and the resulting sentence of thirty years. We affirm.

### Issues

Sada presents for our review the following restated issues:

1. Whether his constitutional rights were violated when the trial court limited his counsel's cross-examination of an accomplice;

2. Whether he was denied the effective assistance of trial counsel; and

3. Whether he was denied the effective assistance of appellate counsel in his direct appeal.

### Facts and Procedural History

The facts, as set forth by our supreme court in Sada's direct appeal, are as follows:

On October 1, 1985, an Indianapolis police detective, pursuant to a warrant, searched the motel room of John Wheelington. Upon discovering assorted narcotics and paraphernalia, the detective arrested Wheelington. While in police custody, Wheelington described a pending drug transaction between himself and two Hispanic men who were returning from Florida with high-grade cocaine. In exchange for some cocaine for his personal use, Wheelington was to "cut" the cocaine and assist the two men in its sale. Wheelington stated that the delivery was to occur within a day or two. "Mexico Joe" and "Max" were to call Wheelington on his pager, whereupon he was to call them and give them his number so they could call again and arrange the meeting.

On October 2, at about 6:00 a.m. the detective and other officers took Wheelington to the motel room and waited for the phone call from the two men. At 9:00 p.m., "Mexico Joe" called Wheelington's pager. Returning the call, Wheelington gave "Mexico Joe" the motel room and phone numbers. "Mexico Joe" responded that he and "Max" would reach the room in about ten minutes. About ten or fifteen minutes later, the defendants, both Hispanic, and a woman arrived by car at the motel. When the three came to Wheelington's room, knocked and entered, they were placed under arrest while a police officer searched a grocery sack Enamorado had carried in. The police officer unwrapped a smaller brown bag within the sack and found a clear plastic bag with a white powder in it. A lab analysis revealed the white powder was cocaine, 272 grams at 92.9% purity. Witnesses for the State testified that the amount and purity of the cocaine indicated that it was to be "cut" or "stepped on" to form smaller, less potent units for sale. The arresting officers also found in each defendant's jacket a small bag of cocaine.

*Enamorado v. State*, 534 N.E.2d 740, 742 (Ind.1989). Additional facts relevant to this appeal will be supplied as necessary.

Sada was tried by a jury and convicted of Dealing in Cocaine and Conspiracy to Commit Dealing in Cocaine, both Class A felonies, and Violation of Indiana's Uniform Controlled Substances Act, a Class C felony. He was sentenced to thirty years imprisonment. On direct appeal, our supreme court affirmed Sada's convictions.

In 1990, Sada filed a *pro se* petition for post-conviction relief. The State Public Defender entered an appearance for Sada and filed an amended petition for post-conviction relief in 1997. The petition alleged that Sada was deprived of his right to confront and cross-examine a State's witness, was denied the effective assistance of trial and appellate counsel, and was subjected to double jeopardy by being convicted of both dealing in cocaine and possession of cocaine. After a hearing, the post-conviction court entered the following findings of fact and conclusions of law denying Sada's petition:

## FINDINGS OF FACT

1. The petitioner was convicted of Dealing Cocaine, Conspiracy to Deal Cocaine and Violation of the Controlled Substances Act, and was sentenced to thirty (30) years imprisonment. He appealed.

2. The petitioner filed a petition for post-conviction relief, which was answered by the State of Indiana on March 12, 1991. The petition was amended on July 3, 1997.

3. On September 15, 1997 the Court conducted a hearing on the petition, at which it heard testimony from A. Luis Ortiz and the petitioner. Additionally, the Court received in evidence the Record of Proceedings from the petitioner's appeal, copies of the appellate briefs, an affidavit of Craig Turner and an affidavit of Maximo Enamorado. The Court also took Judicial Notice of its file and record in this cause. From the evidence considered, the Court finds:

A. At trial, the petitioner was represented by A. Luis Ortiz, an attorney of the petitioner's own choosing.

B. On appeal, the petitioner was represented by attorney Craig Turner.

## CONCLUSIONS OF LAW

1. Because the petitioner was convicted at trial and appealed, and because the State asserted defenses of *res judicata* and waiver, this Court cannot address any issue that was previously decided, or any issue that was available to the petitioner on appeal, but which was not raised therein. The Court concludes that of the issues presented in the instant petition, only one was not available to the petitioner on appeal, to-wit: the allegation that appellate counsel rendered ineffective assistance. The petitioner suggests that appellate counsel's alleged ineffectiveness caused the remaining issues to be waived. Thus, this Court must make a preliminary determination regarding appellate counsel's effectiveness; and only if that determination is made in the petitioner's favor can the Court address the merits of the otherwise-waived issues.

2. The petitioner *was not* denied the effective assistance of appellate counsel. The evidence indicates that counsel prepared and filed the Record of Proceedings, and that he researched, prepared and filed the appellate brief. The Court cannot presume that counsel was ineffective merely because the appeal was not successful. The evidence herein shows that counsel raised and argued those viable issues that had been properly preserved at trial or in the Motion to Correct Errors. This Court concludes that appellate counsel's performance herein was not deficient, thus precluding a determination of his ineffectiveness. *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because the Court concludes that the petitioner was not denied the effective assistance of appellate counsel, the Court cannot address the remaining issues presented in the instant petition for post-conviction relief.

3. The petitioner argues that one issue deserves consideration because it involves "fundamental" error. Specifically, he argues that the conviction and sentence for both dealing cocaine (Count I) and possession of cocaine (Count III) violate the protection against double jeopardy. The Court notes that the sentences for the two offenses were ordered to be served concurrently. The Court further notes that these two convictions would not—in the future—meet the test for prior unrelated felony convictions. It would appear then, that the petitioner has suffered no prejudice as a result of the imposition of these convictions and sentences. It is difficult to comprehend how the imposition of these convictions and sentences—if error at all—could be deemed fundamental in nature. Further, it must be presumed that if error of fundamental dimension existed herein, such error would have been detected by the Supreme Court of Indiana in its review of this record. Nonetheless, the Court—by separate entry—will vacate the conviction and sentence for possession of cocaine. In all other respects, the petition for post-conviction relief shall be denied.

P–C.R. R. 68–70.[1] Sada now appeals.

### Discussion and Decision

### A. Standard of Review

 The purpose of a petition for post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Carrington v. State*, 678 N.E.2d 1143, 1146 (Ind.Ct.App.1997), *trans. denied.* Post-conviction procedures are reserved for subsequent collateral challenges and may not provide a "super appeal" for the convicted. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Montano v. State*, 649 N.E.2d 1053, 1056 (Ind.Ct.App. 1995), *trans. denied.* Thus, in general, if an issue was available on direct appeal but not litigated, it is deemed waived. *Madden v. State*, 656 N.E.2d 524, 526 (Ind.Ct.App.1995), *trans. denied.* But see *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998) (holding that "a

---

**1.** Because we have before us both the Record of the Proceedings filed in Sada's direct appeal from his convictions, and also the Record of the Proceedings from the post-conviction proceedings, we will cite to the post-conviction record as "P–C.R. R." and to the trial record as "T.R."

Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings.").

 The petitioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witnesses. *Montano*, 649 N.E.2d at 1056. To prevail on appeal from the denial of a petition for post-conviction relief, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.* at 1120.

## B. Denial of Right to Confront and Cross–Examine

Wheelington, who had originally informed police of Sada's involvement in a pending drug transaction, testified for the State during Sada's trial. During cross-examination of Wheelington, Sada's counsel attempted to question Wheelington about the nature and extent of his agreement with the State to testify against Sada:

[Defense counsel]: Had you been charged with possession of cocaine and other paraphernalia? Testimony is that you would have been charged with that felony. Indiana has got felonies in classes; do you recall what class felony you would be charged?

[Wheelington]: I imagine they get [sic] me with Possession with Intent, which is an A felony.

[Defense counsel]: Which is an A felony; and how much time does an A felony carry in the State of Indiana?

[Prosecutor]: Judge, I'm going to object; I think he's gone a little bit too far in his questioning.

[Defense counsel]: Your Honor, he made an agreement. That agreement is no prosecution; and I want this Jury to know what that agreement was, and what it entails.

[Court]: He's already testified to the agreement; obviously you're entitled to ask him about the agreement. But, as you're well aware, the sentences in the State of Indiana are under the control of the trial Judge alone. . . .

. . .

[Defense counsel]: What he received was no jail time. I want this jury to know how much jail time he was not going to get, for turning these two people over.

[Prosecutor]: Judge, I think he'd be entitled to ask that questions [sic], if in fact he'd establish what class felony, and the fact that that was actually discussed between [the detective] and the witness. But, at this he just asked the witness about what class it was; and; the witness gave his opinion. And, I don't think that this, at this time is enough to go into anything further.

[Court]: I believe he's testified that Dealing is a class A felony, right? . . . Allright [sic], you can go that far. Potential penalties for class A felonies, you can't go into.

R. 357–60. In his amended petition for post-conviction relief, Sada alleged, for the first time, that the trial court erred in limiting his cross examination of Wheelington because this denied him his constitutional right to confront and cross-examine a witness against him. Sada relies on the case of *Jarrett v. State*, 498 N.E.2d 967 (Ind.1986), which was decided subsequent to Sada's trial, but prior to the filing of an appellate brief on his behalf in his direct appeal.[2] *Jarrett* held that it was reversible error to refuse to permit co-offenders to be cross-examined regarding the penalties they would have faced

---

2. Sada's trial was held on March 3 and 4, 1986. His Motion to Correct Errors was filed on May 21, 1986, and his praecipe was filed on August 25, 1986. *Jarrett* was decided on October 21,

1986. The Record of Proceedings of Sada's trial was filed on January 30, 1987, and his Appellant's Brief was filed on July 10, 1987.

had they not entered into plea bargains with the State because the "exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 968–69. The State responds that this argument is waived for failure to raise it in the direct appeal.[3]

■ In determining that Sada was not entitled to post-conviction relief, the post-conviction court effectively determined that this issue had been waived for failure to raise it on direct appeal. As set forth previously, an issue such as this that was available on direct appeal, but not raised therein, is generally waived on post-conviction. *Carrington,* 678 N.E.2d at 1146. We do not agree that this issue was waived for failure to raise it on direct appeal, because it was not available on direct appeal, as we will discuss below. Nevertheless, the post-conviction court did not err in denying Sada's petition for post-conviction relief with respect to this claimed error. The trial court was entitled to rule based upon the state of the law at the time of the trial. In general, the scope, extent, method and manner of cross examination rests primarily within the sound discretion of the trial court. *Bonadies v. Sisk,* 691 N.E.2d 1279, 1280 (Ind.Ct.App.1998). Therefore, the trial court did not err in limiting Sada's cross examination of Wheelington.

## C. Ineffective Assistance of Counsel

Sada also asserts that he was denied the effective assistance of both trial and appellate counsel. Specifically, he alleges that his trial counsel, in representing both Sada and his co-defendant, had a conflict of interest which was detrimental to Sada, that trial counsel failed to preserve the limitation of cross examination issue in the Motion to Correct Errors filed on Sada's behalf, and that trial counsel advanced a legally meritless defense on Sada's behalf. Sada further asserts that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness and the limitation of cross examination as issues in his direct appeal.

■ We analyze claims of both ineffective assistance of trial counsel and ineffective assistance of appellate counsel according to the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lowery v. State,* 640 N.E.2d 1031, 1036 (Ind.1994), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995) (standard of review for claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel). First, we require the petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Roche v. State,* 690 N.E.2d 1115, 1120 (Ind.1997). Second, we require the petitioner to show adverse prejudice as a result of the deficient performance, that is, that but for counsel's deficient performance, the result of the proceedings would have been different. *Taylor v. State,* 659 N.E.2d 1054, 1061 (Ind.Ct.App.1995), *trans. denied.* We will find prejudice when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unjust or unreliable. *Id.* It is not necessary to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Toan v. State,* 691 N.E.2d 477, 479 (Ind.Ct.App.1998).

■ There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the petitioner to overcome that presumption. *Lee v. State,* 694 N.E.2d 719, 720 (Ind.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 554, 142 L.Ed.2d 461

---

3. Sada makes the allegation in his brief that the State "chose to meet the allegation in Sada's Amended Petition for Post-Conviction Relief on the merits. Therefore, the post-conviction court was also required to address the claims on the merits." Brief of Petitioner–Appellant at 13. We can discern nothing in the Record from which it could be said that the State addressed the merits of this contention. The State answered Sada's original petition for post-conviction relief by asserting waiver of the issues raised therein. The State did not answer the amended petition. At the hearing on Sada's petition, there was no testimony regarding this issue.

(1998). A petitioner must show more than isolated poor strategy, bad tactics, a mistake, carelessness or inexperience; the defense as a whole must be inadequate. *Davis v. State*, 675 N.E.2d 1097, 1100 (Ind.1996).

### 1. Ineffectiveness of Trial Counsel

We note initially that the State has argued that Sada's claim of ineffective assistance of trial counsel is waived for failure to raise it on direct appeal. However, our supreme court recently has held that "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings." *Woods*, 701 N.E.2d at 1220. Under this new rule of law, we need not evaluate Sada's ineffective assistance of trial counsel claims indirectly, but may address them as if he were raising them for the first time on direct appeal.

#### a. Conflict of Interest

Sada first asserts that his trial counsel was ineffective because he had a conflict of interest which was detrimental to Sada. Luis Ortiz represented Sada at trial. Ortiz also represented Sada's co-defendant, Maximo Enamorado, and the two were tried in a single proceeding. The defense theory was that Sada and Enamorado were merely "mules," hired by Wheelington to pick up drugs in Florida and return them to Indiana. Sada alleges that the "evidence showed Sada was not as culpable as Enamorado," Brief of Appellant at 15, and that in defending Enamorado, Ortiz presented evidence detrimental to Sada and made Enamorado appear sympathetic at Sada's expense.

■ To prevail on a claim of conflict of interest, Sada must demonstrate to the post-conviction court that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Jackson v. State*, 676 N.E.2d 745, 754 (Ind.Ct.App.1997), *trans. denied*. Although joint representation of co-defendants should be avoided, such representation is not *per se* evidence of ineffective representation.

*Id.* Any divergence of interests between co-defendants, however, requires separate counsel for each. *Holleman v. State*, 641 N.E.2d 638, 640 (Ind.Ct.App.1994), *trans. denied*. Because Sada did not object to the joint representation at trial, he must show that the joint representation resulted in actual prejudice. *Gray v. State*, 579 N.E.2d 605, 607 (Ind.1991).

■ A review of the record fails to support the conclusion that counsel's joint representation resulted in actual prejudice to Sada. Sada's trial counsel effectively elicited testimony that although Sada accompanied Enamorado, it was Enamorado who made the arrangement with Wheelington to travel to Florida to purchase narcotics and return them to Indiana, it was Enamorado who actually purchased the narcotics, and it was Enamorado who carried both the cash for the purchase and then the drugs themselves. Sada fails to meet his burden of proving that he was prejudiced by his counsel's joint representation.

#### b. Preservation of Cross–Examination Issue

Sada also argues that his trial counsel was ineffective for failing to raise the trial court's limitation of his cross examination of Wheelington in a Motion to Correct Error filed on his behalf. We cannot agree.

■ At the time of Sada's trial and the subsequent Motion to Correct Error, *Jarrett*, which set forth clearly for the first time that it was reversible error to refuse to permit cross examination of a co-offender with respect to the penalties he would have faced but for entering into a plea agreement and agreeing to testify, had not yet been decided. It was therefore within the trial court's discretion to limit cross examination, and there was no error. It cannot be said that it was unreasonable for trial counsel to fail to include in the Motion to Correct Error an issue which was not an error or to fail to anticipate a change in the law.[4]

4. Having determined that trial counsel's performance in this regard was not outside the wide range of professionally competent assistance, we need not address whether there was any prejudice to Sada. We do note, however, that it was before the jury that Wheelington had not been and was not going to be charged with any criminal offense arising out of this incident, which is

### c. "Legally Meritless Defense"

Finally, Sada argues that his trial counsel was ineffective for raising a "legally meritless defense" on his behalf. Brief of Appellant at 19. Specifically, Sada asserts that the theory that Sada and Enamorado were only "mules" used to transport drugs in fact admitted the allegations against them and was sufficient to support convictions for dealing and conspiracy to deal.

█ Even if Sada and Enamorado had not testified and had not admitted that they had traveled to Florida to purchase narcotics for Wheelington, the State's case was sufficient to prove that Sada and Enamorado were guilty of the crimes charged. Wheelington testified as to his dealings with the two men in regards to the purchase of the narcotics. A police officer testified about the arrest and what was found in the possession of the two men. We will not speculate as to whether counsel's defense strategy was the most advantageous, but we cannot see that Sada was prejudiced by it. Sada has failed to show that the outcome of his trial would have been different but for counsel's performance.

### 2. Ineffectiveness of Appellate Counsel

Sada also alleges that his appellate counsel was ineffective for failing to raise the cross examination issue after *Jarrett* was decided, and for failing to argue that his trial counsel was ineffective.

At the time of Sada's trial and direct appeal, Trial Rule 59 made Motions to Correct Error mandatory in every instance, and limited the grounds for appeal to those raised in the Motion to Correct Error. *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244, 246 (Ind.1989). Sada's appellate counsel was, therefore, limited on direct appeal to those errors raised in the Motion to Correct Error. Because the cross examination issue was not included in the Motion to Correct Error, appellate counsel could not have raised the issue on direct appeal.

█ Sada, however, argues that counsel should have petitioned the trial court to file a belated Motion to Correct Error pursuant to Post–Conviction Rule 2(2). This rule provides as follows:

> Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion to correct error addressing the conviction, where:
>
> (a) no timely and adequate motion to correct error was filed for the defendant;
>
> (b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and
>
> (c) the defendant has been diligent in requesting permission to file a belated motion error [sic] under this rule.

P–C.R. 2(2). This provision would have afforded Sada no relief, as the Motion to Correct Error, *when filed,* was both timely and adequate. Therefore, even had his appellate counsel petitioned the court for permission to file a belated motion to correct error to include the cross examination issue, there would have been no grounds to permit the filing of such motion.

Sada also asserts that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel. Having already determined that Sada's trial counsel was not ineffective, we see no error in this.

### Conclusion

The post-conviction court did not err in denying Sada's petition for post-conviction relief. The trial court did not err in limiting Sada's cross examination of a co-offender, as the law at the time of Sada's trial did not require such line of inquiry to be allowed. Further, neither Sada's trial nor his appellate counsel were ineffective. The post-conviction court is affirmed.

Affirmed.

BAKER, J., and GARRARD, J., concur.

---

in accord with the case law existing at the time of Sada's trial. *See Newman v. State,* 263 Ind. 569, 334 N.E.2d 684 (1975) (holding that the jury must be informed that there is an agreement with a witness for leniency in exchange for his testimony).