## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2018, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

John B. Myles
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John B. Myles,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 16, 2018

Court of Appeals Case No.
45A04-1611-PC-2602

Appeal from the Lake Superior Court.
The Honorable Salvador Vasquez, Judge.
The Honorable Kathleen Sullivan, Magistrate.
Trial Court Cause Nos.
45G01-0910-PC-9
45G01-0911-PC-10

**Friedlander, Senior Judge**

[1]     John B. Myles appeals the denial of his petition for post-conviction relief.  We affirm.

[2]     This appeal arises from two post-conviction cases that the court consolidated for hearing. In Cause Number 45G01-0701-FB-7 (FB-7), the facts were as follows:

> On October 4, 2006, Cindy Allbritten was working as a store manager at Walgreens in Schererville. When Cindy arrived for work at approximately 7:30 a.m., fellow employee Anita Walker was already there. As Cindy was opening the door, a man approached Cindy and Anita, pointed a gun at them, and ordered them to enter the store office. When Cindy looked at the man's face, he told her, 'Don't look at me, or I'll kill you.' Tr. p. 35. The man then instructed Cindy to open the store safe at gunpoint. Cindy opened the safe and removed approximately $2200. The man then handcuffed Cindy and Anita so that they were face down on the floor. As the man bagged the money, he told Cindy and Anita several times, 'Don't turn around or I'll kill you.' *Id.* at 40. The man left Walgreens. Another employee arrived approximately fifteen minutes later, found the women on the floor, and called the police.

> Police officers arrived on the scene about five minutes later and removed the handcuffs from Cindy and Anita. The police were able to lift fingerprints from the handcuffs. Cindy described the robber as a dark-skinned, African-American male in his sixties with a medium build. She said he was wearing a black hat and a long, black trench coat. Anita similarly described the man as a dark-skinned, African-American male in his sixties with pockmarked skin and a medium build. She also said he was wearing a hat and a dark jacket.

> In January 2007, both Cindy and Anita identified Myles in a photo array as the man who had robbed Walgreens and handcuffed them. Also in January 2007, a search warrant was obtained and executed for Myles' apartment. Police officers found U.S. currency totaling $2920. In January 2008, the Indiana State Police Lab matched Myles' fingerprints to a print taken from the handcuffs.

The State charged Myles with Class B felony robbery, two counts of Class B felony criminal confinement, and two counts of Class D felony criminal confinement. The State also alleged that Myles was a habitual offender. Following a jury trial, Myles was found guilty as charged. Myles then pled guilty to being a habitual offender.

*Myles v. State*, Cause No. 45A03-0806-CR-287, *2-3 (Ind. Ct. App. Dec. 29, 2008) (CR-287). Myles appealed, claiming the trial court erred in the admission of evidence. The Court affirmed.

[3]     In 45G01-0701-FB-8 (FB-8), the facts were as follows:

[S]hortly before 7:00 a.m. on October 11, 2006, assistant manager Nathaniel Thompson and photo specialist Staci Gamblin unlocked the front entrance of their Walgreens drugstore in Hammond. Thompson noticed a man, later identified as Myles, 'pacing a little bit' across the street. Tr. at 90. Thompson and Gamblin entered the store, locked the door behind them, and passed through two locked doors to the office. Thompson then returned to the front of the store to organize the newspapers and open for business. As Thompson unlocked the front entrance, he saw Myles approaching the store. Myles wore a ballcap, eyeglasses, and a mask covering his nose and mouth. When Thompson greeted him, Myles pulled a black revolver from his waistband and asked, 'Where is the girl?' *Id.* at 100. Thompson raised his hands and led Myles to the office.

Myles ordered Gamblin to lie on her stomach and told Thompson to empty two safes. Thompson deposited the money into a bag Myles gave him. Myles ordered Thompson to lie next to Staci. As Thompson did so, he turned and saw Myles holding a latex glove and a pair of handcuffs in one hand, attempting to chain Thompson's left wrist to Gamblin's right wrist. Myles fastened the handcuffs around Gamblin's wrist and told them not

to move or he would kill them. After Myles left the store, Gamblin called the police.

Evidence technicians collected the handcuffs and one latex glove from the office and a second latex glove behind the first locked door leading to the office. State police laboratory analysts recovered Myles's DNA from inside one of the gloves and his left index fingerprint from the handcuffs.

In November 2006, police showed Gamblin and Thompson a photo lineup that did not include Myles's photo. Gamblin identified one of the men as the perpetrator. Thompson was unable to identify any of the men as the perpetrator. In January 2007, police showed Thompson a photo lineup that included a photo of Myles not wearing eyeglasses. Thompson circled Myles's photo and stated that he was 90% certain that Myles was the perpetrator. Police then showed Thompson a driver's license photo of Myles wearing eyeglasses, and Thompson stated that he was "a hundred percent sure" that Myles was the person who had robbed the drugstore. *Id*. at 188.

On January 17, 2007, the State charged Myles with one count of class B felony robbery and two counts of class B felony criminal confinement. The State also filed a habitual offender allegation, which was later dismissed. A jury trial began on November 3, 2008. After the State rested, Myles moved for a directed verdict on the basis that the State had failed to prove identity. The trial court denied the motion. On November 5, 2008, the jury found Myles guilty as charged.

*Myles v. State*, No. 45A03-0901-CR-33, * 2-3 (Ind. Ct. App. Sept. 9, 2009) (CR-33). Myles appealed, challenging the sufficiency of the evidence to sustain the convictions. The Court affirmed the trial court's judgment.

[4] In 2009, Myles filed petitions for post-conviction relief for his convictions in FB-7 and FB-8. The post-conviction court referred the petitions to the State Public Defender, who declined to represent Myles. Myles asked the post-

conviction court to appoint different counsel for him, but the court denied his request. The court consolidated the post-conviction cases for an evidentiary hearing. After the hearing, the post-conviction court issued findings of fact and conclusions of law denying Myles' petitions. This appeal followed.

[5] Myles raises several claims, which we restate as follows: (1) whether the post-conviction court erred in denying Myles' request for appointed counsel; (2) whether the court abused its discretion by denying Myles' request to subpoena police officers who had participated in his arrest; (3) whether the court erred by denying Myles' request for transcripts of pretrial hearings in FB-7 and FB-8; (4) whether the court was biased against him; and (5) whether the court erred in denying Myles' claim of ineffective assistance of trial counsel.

# 1.

[6] Myles argues the post-conviction court should have granted his request to appoint counsel. The State responds that Myles was not entitled to appointed representation. We agree with the State.

[7] If a post-conviction court determines a petitioner is indigent, incarcerated in the Indiana Department of Correction, and has requested counsel, the court shall send a copy of the petition for post-conviction relief to the State Public Defender. Ind. Post-Conviction Rule 1(2). The State Public Defender may represent the petitioner if "the proceedings are meritorious and in the interests of justice," but the Defender is not obligated to accept a case. Ind. Post-

Conviction Rule 1(9). A post-conviction court "is not required to appoint counsel for a petitioner other than the Public Defender." *Id.*

[8] There is no right to representation by counsel in post-conviction proceedings. "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks on their convictions, . . . , and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, 95 L. Ed. 2d 539 (1987); *see also Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989) ("The right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1, § 13 of the Constitution of Indiana"). Considering these authorities, the post-conviction court did not err in denying Myles' request for appointed post-conviction counsel.

## 2.

[9] Myles claims the post-conviction court deprived him of due process of law, in violation of his "5th and 14th Amendment rights," by denying his motions to subpoena police officers who had arrested him. Appellant's Br. p. 5. His argument, in total, is as follows: "The court further abused its discretion by denying Myles' request for subpoena duces tecum for the arresting officers." *Id.* at 30. This claim is waived for failure to present cogent argument supported by citation to authority. *See Bigler v. State*, 732 N.E.2d 191 (Ind. Ct. App. 2000)

(rejecting claim consisting of five sentences as unsupported by cogent argument), *trans. denied*.

[10] Waiver notwithstanding, we find no error. In post-conviction proceedings, requests for subpoenas are governed by the following rule:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Ind. Post-Conviction Rule 1(9)(b). We review a post-conviction court's decision on subpoenas for an abuse of discretion and will find an abuse of discretion if its decision is against the logic and effect of the facts and circumstances before it. *Pannell v. State*, 36 N.E.3d 477 (Ind. Ct. App. 2015), *trans. denied*.

[11] Here, Myles asked the post-conviction court to issue subpoenas to Officers Brian Vandenburg and Thomas Grabowski, claiming that their testimony would establish that he was arrested, and his apartment was searched, pursuant to invalid warrants. Appellant's App. Vol. 2, pp. 127, 131. He further argued this evidence was necessary to support his claim of ineffective assistance of trial counsel. We disagree. The officers who arrested Myles and searched his apartment would not be able to shed light on the warrants' validity because the decision to issue the warrants had already been made when the officers

executed the warrants. We find no abuse of discretion in refusing to issue subpoenas for the officers.

## 3.

Myles claims the post-conviction court erred in denying his request for transcripts of pre-trial hearings in FB-7 and FB-8, arguing they were essential to prove his claims of ineffective assistance. The State argues Myles has waived this claim because the only evidence that he made such a request is a motion that was not file-marked by the post-conviction court clerk. We disagree with the State and address the merits of Myles' claim.

"Petitioners who are indigent and proceeding in forma pauperis shall be entitled to production of guilty plea and sentencing transcripts at public expense, prior to a hearing, if the petition is not dismissed." Ind. Post-Conviction Rule 1(9)(b). In this case, Myles did not seek a guilty plea or sentencing transcript, but rather pretrial transcripts that had not been prepared for his direct appeals.

Myles attached an affidavit to his request for transcripts, in which stated he needed the pretrial hearings to support his claim of ineffective assistance of counsel, but he failed to explain what he expected to prove through the transcripts. The court in FB-8 denied Myles' request to produce a transcript of pretrial hearings, determining: "The Court will not order transcripts at the Court's expense absent a showing of specific need." Appellant's App. Vol. 2, p. 299. The court did not absolutely bar Myles from obtaining pretrial transcripts at public expense but explained that Myles would need to explain why the

transcripts were necessary. We find no error. *See, e.g.*, *Scott v. State*, 593 N.E.2d 198 (Ind. 1992) (holding that a defendant requesting the assistance of an expert at public expense must explain why an expert witness is necessary and would help the defense).

## 4.

Myles next claims the post-conviction magistrate displayed bias against him by introducing "un-solicited [sic] and fraudulent evidence." Appellant's Br. p. 24. The law presumes a judge is unbiased and unprejudiced. *State v. Shackleford*, 922 N.E.2d 702 (Ind. Ct. App. 2010), *trans. denied*. A judge's adverse rulings on judicial matters do not indicate a personal bias toward a defendant that calls into question the trial court's impartiality. *Harrison v. State*, 707 N.E.2d 767 (Ind. 1999).

During the evidentiary hearing, the post-conviction magistrate took judicial notice of the court's files. The magistrate also noted there was a sealed document in the files and offered a copy of the document to the parties. The magistrate variously characterized the document as "an arrest warrant" and a "supplemental warrant form." Tr. Vol. 2, pp. 72, 74; Appellant's App. Vol. 2, p. 56. Myles asked the court questions about the document, but the magistrate declined to answer, stating: "I'm not answering your legal questions. You can do that research when you get back to the institution. If you think there's an error in that – that's not admitted into the evidence, except that it's in the Court's file, which you asked me to take notice of." *Id.* at 95.

We cannot conclude the post-conviction magistrate demonstrated bias against Myles by giving him a copy of the document. Myles' claim that the court mischaracterized the document as an arrest warrant when it may have been something else does not call the court's impartiality into question. Our review of the record gives no indication of any personal bias on the part of the magistrate, merely an adverse ruling. Myles' claim must fail. *See Rondeau v. State*, 48 N.E.3d 907 (Ind. Ct. App. 2016) (adverse decisions alone insufficient to establish bias), *trans. denied*.

# 5.

Myles argues the post-conviction court erred in denying his claims of ineffective assistance of trial counsel in FB-7 and FB-8. The purpose of a petition for post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Sada v. State*, 706 N.E.2d 192 (Ind. Ct. App. 1999). When a petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Id.* Thus, post-conviction procedures do not afford petitioners with a "'super appeal.'" *Perry v. State*, 904 N.E.2d 302, 307 (Ind. Ct. App. 2009) (quoting *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*.

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Campbell v. State*, 19 N.E.3d 271 (Ind. 2014). When appealing the denial of post-conviction relief,

the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Hollowell v. State*, 19 N.E.3d 263 (Ind. 2014).

[20] The post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). On review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Witt v. State*, 938 N.E.2d 1193 (Ind. Ct. App. 2010), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[21] With respect to claims of ineffective assistance of trial counsel, the Indiana Supreme Court has stated:

> To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's

> unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.

*Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013) (citations and quotations omitted).  Counsel's performance is presumed effective, and a petitioner must offer strong and convincing evidence to overcome this presumption.  *Williams v. State*, 771 N.E.2d 70 (Ind. 2002).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

[22]  Marc Laterzo represented Myles in FB-7 and in the preliminary stages of FB-8.  He was later replaced in FB-8 by Sonya Scott-Dix, who represented Myles at trial.  Myles was originally arrested at his apartment on January 12, 2007, pursuant to a warrant, and the State subsequently obtained a search warrant for his apartment.  He argues both attorneys rendered ineffective assistance by failing to obtain a copy of the arrest warrant and, when the State failed to produce the warrant, by failing to move to quash the arrest and to suppress all evidence obtained from the arrest (including the search of the apartment).[1]

---

[1] Myles also argues the absence of the arrest warrant indicates that one never existed, and he alleges that Attorney Laterzo "protected the police" and was "actually conspiring" against him by failing to expose the lack of a warrant.  Reply Br. pp. 8, 11.  We disagree.  Viewing the evidence in the light most favorable to the post-conviction judgment, there is ample circumstantial evidence that the trial court issued an arrest warrant on January 12, 2007.  The CCS for FB-7 indicates a "criminal warrant" was issued for Myles on January 12, 2007.  Appellant's App. for FB-7, p. 8.  Further, on that date a magistrate of the Lake County Superior Court issued a "warrant for the arrest of [Myles]."  *Id.* at 9.  During the post-conviction hearing, Myles offered into evidence a "Wanted Person Table" and a "Warnings/Alerts" document from the Lake County Sheriff, both of which indicated a felony warrant was issued for Myles' arrest on January 12, 2007.  PCR Tr. Vol. 3, Exhibits 2 and 4.

[23]     Attorney Laterzo issued a subpoena duces tecum to the Lake County Sheriff's Department for the arrest warrant in FB-7 and FB-8. PCR Tr. Vol. 3, Ex. 9. Later, Attorney Scott-Dix filed a motion to compel the State to produce the arrest warrant in FB-8. Appellant's Appendix for CR-33, p. 58. It appears the actual arrest warrant was never produced. After reviewing other documents related to Myles' arrest, Laterzo explained he did not file a motion to quash the arrest or suppress evidence because "I didn't see any basis to file a motion." PCR Tr. Vol. 2, p. 26. Attorney Scott-Dix did not remember the details of her representation of Myles and was unclear whether she should have filed a motion to quash the arrest and suppress evidence.

[24]     As to each attorney, Myles was obligated to show that their failure to move to quash the arrest was "due to unacceptable ignorance of the law or some other egregious failure rising to the level of deficient attorney performance." *Woods v. State*, 701 N.E.2d 1208, 1212 (Ind. 1998). Other than claiming—against the weight of the evidence—that no arrest warrant existed, and that Laterzo failed to properly identify some of the documents that were provided by the Lake County Sheriff's office, Myles has not explained why his January 12, 2007 arrest was constitutionally deficient. The application for a search warrant in relation to the Schererville Walgreens robbery describes how officers investigated the Schererville case, but Myles did not identify anything about the process that led to his arrest that violated his constitutional rights. His claim of ineffective assistance must fail as to the arrest warrant.

Next, Myles argues his attorneys rendered deficient performance by failing to "challenge [the] search warrant." Appellant's Br. p. 15. He further describes the search warrant as "defective" and "unlawful." *Id.* at 16. His claim that his attorneys should have challenged the search warrant flows from his claim that his attorneys should have challenged the arrest warrant. The post-conviction court did not err in rejecting Myles' ineffective assistance claim as to the arrest warrant, and as a result his challenge as to the search warrant must also fail.

Next, Myles argues his attorneys rendered deficient performance by failing to investigate an alternative suspect for the crimes, Patrick McGee. While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is also well settled that we should resist judging an attorney's performance with the benefit of hindsight. *McKnight v. State*, 1 N.E.3d 193 (Ind. Ct. App. 2013). Establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what the investigation, if undertaken, would have produced. *Id.*

In this case, McGee did not testify at the post-conviction hearing. Further, Attorney Laterzo testified at the hearing that he remembered McGee was a possible suspect but did not remember anything else. Attorney Scott-Dix testified that she remembered nothing about McGee.

Myles argues that one of the victims in FB-8 identified McGee as the robber in a photo lineup, and further investigation would have provided a different, stronger defense to the charges. We cannot agree. The victim in question,

Staci Gamblin, testified at the original trial in FB-8 that although she had circled a photograph of someone other than Myles, she was not sure of her selection. By contrast, another victim in FB-8, Nathaniel Thompson, clearly identified Myles in the photo lineup after careful thought. It is unclear that further investigation of McGee would have led to a stronger defense, and we agree with the post-conviction court that Myles failed to establish ineffective assistance on this point.

[29] In a related claim, Myles argues Attorney Laterzo rendered ineffective assistance by failing to contact a proposed alibi witness, Mary Johnson. Johnson did not testify at the post-conviction hearing, and Myles did not question Laterzo on this issue. As a result, Myles failed to present any evidence showing what an investigation of his alibi would have produced. The post-conviction court did not err in rejecting this claim. *See Oberst v. State*, 935 N.E.2d 1250 (Ind. Ct. App. 2010) (PCR court did not err in rejecting Oberst's claim of failure to investigate; Oberst failed to present alibi witness at evidentiary hearing), *trans. denied*.

[30] Finally, Myles argues his attorneys were ineffective for failing to challenge the seizure of his vehicles, which the police impounded on the day of his arrest and had towed to a police department to search for evidence. He argues officers from the Hammond Police Department managed the impound process, which was in his view improper because he was not charged in FB-8 for the robbery of the Hammond Walgreens until a week later. In support of his claim, Myles cites to several federal and Indiana constitutional provisions, an Indiana statute,

and a U.S. Supreme Court case, but he does not explain exactly how the seizure of his vehicles ran afoul of those authorities, nor does he cite to the record. We will not search the record to find a basis for a party's argument, nor will we search the authorities cited by a party to find legal support for its position. *Young v. Butts*, 685 N.E.2d 147 (Ind. Ct. App. 1997). This claim is waived.

[31] For the reasons stated above, we affirm the judgment of the trial court.

[32] Judgment affirmed.

Mathias, J., and Bradford, J., concur.