Anthony L. WALKER, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A02–0507–PC–663.

Court of Appeals of Indiana.

Feb. 28, 2006.

Rehearing Denied May 3, 2006.

Anthony L. Walker, Carlisle, IN, pro se.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Judge.

Anthony L. Walker appeals the post-conviction court's denial of his petition for post-conviction relief. Walker raises six issues, which we consolidate and restate as:

I.     Whether Walker waived his free-standing claims of error; and,

II.     Whether his trial counsel and appellate counsel were ineffective for failing to argue that he improperly received an enhanced sentence based upon aggravating circumstances not found by a jury beyond a reasonable doubt in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

We affirm.[1]

The relevant facts, as set out in Walker's direct appeal, follow:

[I]n the afternoon on June 23, 1998, Walker met James Smith in a parking lot at Falcon Creek Apartments in Indianapolis, as previously arranged, to purchase marijuana. Walker had walked to this location, while Smith had driven his mother's car. Smith sold three marijuana cigarettes to Walker at a discount. Smith then suggested that they smoke one of the cigarettes together. As they were doing so, Smith became angry and demanded that Walker pay a past debt. The two men scuffled, and at some point a handgun was brandished. Walker proceeded to shoot Smith three times, twice in the back and once in the back of the head.

Following the shooting, Walker obtained the keys to Smith's mother's car and opened the trunk. He removed the speakers from the trunk and discarded them. Walker then lifted Smith's body into the trunk and drove to Sunrise Apartments. After parking in a vacant garage, Walker removed Smith's clothing and threw them in a dumpster along with the car keys and the handgun used in the shooting. Walker also took Smith's cellular phone, which he discarded a couple weeks later, and a portable radio, which he gave to his girlfriend for her birthday.

Shortly thereafter, a maintenance man noticed the unfamiliar car and called the police. The car was subsequently towed to an impound lot. When Smith's mother went to recover the car the next evening, she discovered Smith's partially decomposed corpse in the trunk. Smith's mother did not terminate the cell phone account, and phone calls continued to appear on the billing record after his death. Police investigators eventually traced these calls to Walker and questioned him five times concerning his involvement in Smith's death. Walker gave several different stories and, in the last interview on August 6, 1998, finally confessed to the actions set forth above. He maintained, however, that he shot Smith in self-defense.

On August 7, 1998, Walker was charged with murder, felony murder, robbery as a class A felony, and auto theft. Following a three-day jury trial, the jury found him guilty of the lesser-included offense of voluntary manslaughter as a class A felony and of robbery and auto theft as charged. The trial court reduced Walker's robbery conviction to a class B felony, refusing to further reduce the conviction to a class C felony. The trial court then imposed the following executed sentence: An enhanced forty-five-year term for voluntary manslaughter; the presumptive ten-year sentence for robbery as a class B felony; and, the maximum three-year sentence for auto theft. The trial court ordered the voluntary manslaughter and robbery sentences to be served consecutively and the auto theft sentence to run concurrent to those, for an aggregate sentence of fifty-five years.

*Walker v. State*, 758 N.E.2d 563, 564–565 (Ind.Ct.App.2001) (footnote omitted), *reh'g denied, trans. denied.* Walker was sentenced on December 29, 2000.

On direct appeal, Walker raised two issues: (1) whether his conviction for robbery as a class B felony violated the Indiana Double Jeopardy Clause where his

---

**1.** We direct Walker's attention to Ind. Appellate Rule 46(A)(10), which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

conviction for voluntary manslaughter was elevated to a class A felony because the offense was committed by means of a deadly weapon; and (2) whether his sentence for voluntary manslaughter was manifestly unreasonable in light of the nature of the offense and character of the offender. *Id.* at 564. We held that "there [was] a reasonable possibility that the evidentiary facts used by the jury to enhance Walker's conviction for voluntary manslaughter may also have been used to enhance his conviction for robbery" and remanded to the trial court with instructions to reduce the robbery conviction to a class C felony and to reduce Walker's corresponding sentence to the presumptive sentence of four years. *Id.* at 567. However, we also held that his forty-five-year sentence for voluntary manslaughter was not manifestly unreasonable. *Id.* at 568. On remand, the trial court sentenced Walker to an aggregate term of forty-nine years in the Indiana Department of Correction.

Walker filed a petition for post-conviction relief on July 30, 2003, and an amended petition on December 15, 2004. In the amended petition, Walker alleged that his trial and appellate counsel were ineffective for failing to object to his sentence based upon *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and that the trial court erred by sentencing him in violation of *Apprendi* and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*. After a hearing, the post-conviction court entered findings of fact and conclusions thereon as follows:

\*      \*      \*      \*      \*      \*

2. The Court first finds Petitioner is entitled to no relief on his claim that trial counsel was ineffective for failing to object to the Court sentencing Petitioner beyond the presumptive without a jury's determination of ag-

gravating factors. In order to prevail on his post-conviction claim that his Sixth Amendment right to effective assistance of counsel was violated, Petitioner must establish the two components from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind. 2003) (citing *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (parallel citations omitted)). First, Petitioner must show that defense counsel's performance was deficient, which "requires showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052). This objective standard of reasonableness is based on "prevailing professional norms." *Id.* There is a strong presumption that counsel rendered adequate assistance and made all decisions by exercising reasonable professional judgment. *Martin v. State*, 766 N.E.2d 351, 361 (Ind.2002)[sic] (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). "Even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client." *Id.* Thus, counsel's representation is not rendered ineffective by isolated mistakes, poor strategy, inexperience and bad judgment. *Id.*

Second, Petitioner must show that the deficient performance prejudiced the defense. *Wesley*, 788 N.E.2d at 1252. Prejudice is proven by showing that counsel's errors were so serious as to

deprive the defendant of a fair trial where the result is unreliable. *Id.* In other words, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would be different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Further, the two prongs are separate and independent inquiries, and if a court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Martin v. State,* 766 N.E.2d 351, 360 (Ind. 2002)[sic] (citing *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052)).

Petitioner relies on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.E.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to support his claim that counsel should have objected to Court sentencing him beyond the presumptive without a jury's determination of aggravators ... Our Supreme Court recently addressed the application and ramifications of the Supreme Court's *Blakely* decision to Indiana sentencings and found that the law now requires a jury to find aggravating factors to enhance a sentence beyond the presumptive. *Smylie v. State,* 823 N.E.2d 679 (Ind. 2005). This requirement does not apply where the Court is using criminal convictions or facts admitted by the defendant. Although our Supreme Court found that *Blakely* affects Indiana's sentencing scheme, the Court also found that this is a new rule of criminal procedure and is applicable only to those cases still pending on direct review where a sentencing claim has not been forfeited or waived. [*Id.* at 690–691]. The *Smylie* court also held that:

Because Blakely represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of Blakely or of today's decision would be unjust.

[*Id.* at 689]. Our Supreme Court went on to say "not raising a Blakely claim before its issuance would fall within the range of effective lawyering." *Id.* at [691]. Petitioner is entitled to no relief on his claim.

3. Nor is Petitioner entitled to relief on his claim that appellate counsel was ineffective for failing to challenge his sentence on these grounds. The standard for gauging appellate counsel's performance is the same as that for trial counsel from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Allen v. State,* 749 N.E.2d 1158, 1166–67 (Ind.2001). In other words, Petitioner must prove that appellate counsel performed deficiently and that he was prejudiced as a result. *Id.* When reviewing an appellate counsel's strategic decision to include or exclude issues, courts should be particularly deferential "unless such a decision was unquestionably unreasonable" because deciding which issues to raise on appeal is one of the most important strategic decisions of appellate counsel. *Stevens v. State,* 770 N.E.2d 739, 760 (Ind.2002). To prove ineffective assistance of appellate counsel, a defendant must "show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and

obvious issue and that this failure cannot be explained by any reasonable strategy." *Id.* (quoting *Ben–Yisrayl v. State*, 738 N.E.2d 253, 261 (Ind.2000)). Just as trial counsel was not ineffective for failing to raise a Blakely claim, nor is appellate counsel. As our Supreme Court stated in *Smylie*, "a trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a Blakely claim before Blakely was decided." *Smylie*, [823 N.E.2d at 690]. Petitioner is entitled to no relief on this claim.

4. The Court also finds that Petitioner is entitled to no relief on his freestanding claim that the Court erred in using aggravating factors not determined by a jury to enhance Petitioner's sentence. Petitioner raised no claim regarding his sentence in his direct appeal, and the Court finds that Petitioner has procedurally defaulted such claims now. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind.2002). Moreover, Petitioner cannot avoid his default by calling these alleged errors "fundamental." *Concepcion v. State*, 796 N.E.2d 1256, 1258–59 (Ind.Ct.App. 2003) (citing *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002)). In a recent decision of our Supreme Court, the Court held that "[t]he fundamental error doctrine will not ... be available to attempt retroactive application of Blakely through post-conviction relief." *Smylie*, [823 N.E.2d at 689 n. 16]. Petitioner is entitled to no relief on this claim.

5. The law is with the State and against the Petitioner.

Appellant's Appendix at 163–165. Thus, the post-conviction court denied Walker's petition for post-conviction relief.

Before discussing Walker's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## I.

The first issue is whether Walker waived his freestanding claims of error. Walker first argues that the trial court erred by sentencing him to an enhanced sentence based upon aggravating circumstances not found by a jury beyond a reasonable doubt in light of *Apprendi*. Although the *Apprendi* issue was raised in Walker's amended petition for post-conviction relief, Walker abandoned this issue at the post-conviction hearing. Walker's counsel informed the post-conviction court

and the State that Walker was proceeding only on the ineffective assistance of counsel claims.

■ Walker also argues that the trial court erred by denying his motion to suppress because his statements to the police were coerced and he was not advised of his Miranda rights, that his Fifth Amendment rights were "violated when he was forced to be a witness against himself, through the testimony" of the police detectives, and that he "was denied a fair trial when he was denied his Substantive Constitutional right to be heard at his trial." Appellant's Brief at 1–2. Although these claims were presented in Walker's pro se petition for post-conviction relief, these claims were abandoned in Walker's amended petition for post-conviction relief and were not presented to the post-conviction court.

Because Walker did not present these claims to the post-conviction court, the claims are unavailable here. "Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind.2001) (citing Ind. Post–Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."), and *Howard v. State*, 467 N.E.2d 1, 2 (Ind.1984) ("It is well settled that issues which are not raised either at the trial level, on appeal, or in a post-conviction petition are waived.")), *reh'g denied, cert. denied*, 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). Consequently, Walker's claims are waived. *See, e.g., Richardson v. State*, 800 N.E.2d 639, 647 n. 4 (Ind.Ct.App.2003) (holding that the petitioner waived a claim because it was not presented to the post-conviction court), *trans. denied; Koons v. State*, 771 N.E.2d 685, 691 (Ind.Ct.App.2002) (holding that issues not raised in the petition for post-conviction relief may not be raised for

the first time on the post-conviction appeal; the failure to raise an argument in the petition waives the right to raise the argument on appeal), *trans. denied.*

## II.

■ The next issue is whether Walker's trial counsel and appellate counsel were ineffective for failing to raise a sentencing argument based upon *Apprendi*. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind.2000), *reh'g denied, cert. denied*, 531 U.S. 1128, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied* ), *reh'g denied, cert. denied*, 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.*

### A. Trial Counsel.

■ Walker argues that his trial counsel was ineffective for failing to object to the enhancement of his sentence based upon aggravators not found beyond a rea-

sonable doubt by a jury in light of *Apprendi*.[2] According to Walker, he was sentenced after the United States Supreme Court handed down *Apprendi*, and his trial counsel should have objected to his sentencing based upon *Apprendi*. The post-conviction court rejected Walker's argument because his trial counsel's failure to raise *Apprendi* was not deficient. We agree.

On June 26, 2000, the United States Supreme Court held in *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–2363, that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Four years later, in *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), *reh'g denied*, the Supreme Court interpreted the term " 'statutory maximum' for *Apprendi* purposes [as] the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"

In analyzing the Indiana sentencing scheme in light of *Blakely*, the Indiana Supreme Court noted that "[w]hile many who read *Apprendi* deduced that 'statutory maximum' meant 'statutory maximum,' the *Blakely* majority chose to define it as 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' " *Smylie v. State*, 823

N.E.2d 679, 682–683 (Ind.2005) (citing *Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537). Further, the Court held:

> While *Blakely* certainly states that it is merely an application of "the rule we expressed in *Apprendi v. New Jersey*," 542 U.S. at 301, 124 S.Ct. at 2536, it is clear that *Blakely* went beyond *Apprendi* by defining the term "statutory maximum." As the Seventh Circuit recently said, it "alters courts' understanding of 'statutory maximum' " and therefore runs contrary to the decisions of "every federal court of appeals [that had previously] held that *Apprendi* did not apply to guideline calculations made within the statutory maximum." *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir.2004)(collecting cases). Because *Blakely* radically reshaped our understanding of a critical element of criminal procedure, and ran contrary to established precedent, we conclude that it represents a new rule of criminal procedure.

*Smylie*, 823 N.E.2d at 687.

The Indiana Supreme Court ultimately held that, "as a new rule of constitutional procedure," *Blakely* would be applied "retroactively to all cases on direct review at the time *Blakely* was announced," but "a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering."[3]

---

**2.** Walker also argues that his trial counsel was ineffective for failing to interview and call certain witnesses, failing to allow Walker to testify, failing to pursue the motion to suppress, and failing to object to the admission of Walker's statements to the police. "Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen*, 749 N.E.2d at 1171. Walker did not raise these issues to the

post-conviction court, and consequently, his claims are waived.

**3.** Walker also appears to argue that he should be permitted to make a tardy *Blakely* claim because he raised a sentencing issue in his direct appeal. Appellant's Brief at 7. However, as the Indiana Supreme Court made clear in *Smylie* the rule allowing retroactive application of *Blakely* applied to cases on "direct review at the time *Blakely* was announced."

*Id.* at 690–691. The Court reached this result, in part, "[b]ecause *Blakely* represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of today's decision would be unjust." *Id.* at 690. The Court held that "a trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a *Blakely* claim before *Blakely* was decided." *Id.*

■■■ Walker was sentenced in December 2000, six months after *Apprendi* was decided, but several years before *Blakely* or *Smylie* were decided. Under Walker's argument, his trial counsel would have been required to interpret *Apprendi* in a manner that would have predicted the United States Supreme Court's opinion in *Blakely* and the Indiana Supreme Court's opinion in *Smylie*. As the Indiana Supreme Court noted in *Smylie:* " 'An attorney is not required to anticipate changes in the law and object accordingly' in order to be considered effective." *Smylie*, 823 N.E.2d at 690 (quoting *Fulmer v. State*, 523 N.E.2d 754, 757–758 (Ind.1988)). Further, "[w]hen an ineffective assistance of counsel claim is based on trial counsel's

failure to make an objection, the appellant must. show that a proper objection would have been sustained by the trial court." *Lambert v. State*, 743 N.E.2d 719, 732 (Ind.2001), *reh'g denied, cert. denied*, 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002). Walker has not shown that the objection would have been sustained if his trial counsel had objected to his sentencing based upon *Apprendi* because, at that time, *Apprendi* had not been interpreted in a manner that would have invalidated Walker's sentencing.[4] The post-conviction court's denial of Walker's claim that his trial counsel was ineffective for failing to object based upon *Apprendi* is not clearly erroneous. *See, e.g., Sada v. State*, 706 N.E.2d 192, 199 (Ind.Ct.App.1999) ("It cannot be said that it was unreasonable for trial counsel to fail to include in the Motion to Correct Error an issue which was not an error or to fail to anticipate a change in the law.").

B. *Appellate Counsel.*

■■■ Walker argues that his appellate counsel was ineffective because he failed to argue that Walker was sentenced to an enhanced sentence based upon aggravating circumstances not found by a jury beyond a reasonable doubt in light of *Apprendi*.[5] The post-conviction court re-

---

*Smylie*, 823 N.E.2d at 690–691. Walker's direct appeal was decided in November 2001, and transfer was denied in March 2002, long before *Blakely* was handed down in June 2004. Thus, Walker is not entitled to raise a tardy *Blakely* claim.

4. We also note that the Indiana Supreme Court held in *Smylie:*

Under our holding today, *Blakely* claimants who have appealed their sentences will be allowed to add a tardy *Blakely* claim and thus have no need to claim, "fundamental error." The fundamental error doctrine will not, as caselaw holds, be available to attempt retroactive application of *Blakely* through post-conviction relief.

*Smylie*, 823 N.E.2d at 689 n. 16.

5. Walker also argues that his appellate counsel was ineffective for failing to "challenge that defense counsel did not tender any instruction, especially Sudden Heat; he did not challenge that Walker' [sic] was forced to be a witness against himself; that his client was tricked, and coerced to give a false confession, ... failing to investigate the case or interview any witnesses prior to filing his brief, not even his client; he failed to raise the issue that the Court did not give a voluntarily [sic] manslaughter, involuntarily [sic] manslaughter; sudden heat, Reckless Homicide and homicide instruction, nor did he turn in a complete record, there was no voir dier [sic],

jected Walker's argument because, just as trial counsel was not ineffective for failing to raise the issue, appellate counsel was not ineffective either. We agree.

■■■ As previously noted, we apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams*, 724 N.E.2d at 1078. A petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl*, 729 N.E.2d at 106. Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. *See Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). Our supreme court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." *Id.*

The *Apprendi* argument was not significant or obvious from the face of the record. As we noted above, under Walker's argument, his appellate counsel would have been required to interpret *Apprendi* in a manner that would have predicted the United States Supreme Court's opinion in *Blakely* and the Indiana Supreme Court's opinion in *Smylie*. *Blakely* represented a new interpretation of "statutory maximum" than that described in *Apprendi*. *Smylie*, 823 N.E.2d at 687. "[A]ppellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law." *Trueblood v. State*, 715 N.E.2d 1242, 1258 (Ind.1999), *reh'g denied, cert. denied*, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000). Thus, the post-conviction court's denial of Walker's claim of ineffective assistance of appellate counsel is not clearly erroneous. *See, e.g., Trueblood*, 715 N.E.2d at 1258 (holding that the petitioner's claim of ineffective assistance of appellate counsel failed because appellate counsel could not be held ineffective for failing to anticipate or effectuate a change in the existing law).

For the foregoing reasons, we affirm the post-conviction court's denial of Walker's petition for post-conviction relief.

Affirmed.

RILEY, J., and BARNES, J., concur.

---

opening or closing arguments, there was no result of the polygraph test transcribed copy of police interview, and several other documents that had been requested." Appellant's Brief at 14. "Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen*, 749 N.E.2d at 1171. Walker did not raise these issues to the post-conviction court, and consequently, his claims are waived.