**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DANIEL J. VANDERPOOL**
Vanderpool Law Firm, P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BOBBY WINE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A05-1307-CR-382 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1207-FB-628

**March 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Bobby Wine appeals his conviction for Dealing in a Schedule I, II, or III Controlled Substance, a class B felony.[1] Wine presents the following consolidated and restated issues for review:

1. Did Wine receive ineffective assistance of trial counsel?

2. Was Wine entitled to dismissal based upon an agreement with the State?

3. Did the trial court err by allowing the State to admit evidence of an admission made by Wine?

We affirm.

In June 2012, Wine's daughter agreed to assist officers of the Wabash Police Department with a controlled buy involving Wine. Officer Matt Rebholz arranged for Officer Jason Thomas of a neighboring county to assist as an undercover officer. The buy, which was audio and video recorded, took place at Wine's residence in Wabash County on the afternoon of June 29. Officer Thomas exchanged $75 in recorded buy money with Wine for a number of pills containing hydrocodone. Officer Thomas then inquired whether Wine had methamphetamine. Wine indicated that he could obtain some and would contact his daughter once he had.

Expecting that Wine was going to purchase methamphetamine later that day, officers continued surveillance of him for several hours. Police followed him to a home in Miami County, where another person of interest, Kenny Sweares, lived. After Wine left that home, Officer Rebholz initiated a traffic stop and placed Wine under arrest. Wine then discovered

---

[1] Ind. Code Ann. § 35-48-4-2(a) (West, Westlaw current through 2013 1st Reg. Sess. & 1st Technical Sess.).

that the earlier transaction was a controlled buy, which had been recorded. The recorded buy money was found in Wine's possession at the time of the stop.

Wine pleaded with Officer Rebholz at the scene of the stop and stated he would do "whatever it takes" to avoid going to jail. *Transcript* at 173. Officer Rebholz agreed to "put it on the shelf" but warned that Wine would be "working for [him] for a long time." *Id.* In addition to working as a confidential informant, Officer Rebholz advised Wine that he was expected to stay out of trouble and off drugs. Officer Rebholz asked Wine to explain his visit to Sweares's home. Wine stated that Sweares did not have methamphetamine at the time but that Sweares does manufacture methamphetamine. Officer Rebholz released Wine.

A few days later, Wine contacted Officer Rebholz and admitted that he had lied to him the night of the arrest and that there had been drugs at Sweares's home. Thereafter, on July 5 and 8, Wine assisted Officer Jeff Grant of the Peru City Police Department (Miami County) with two controlled buys with Sweares as the target. These buys lead to charges being filed against Sweares. On July 16, 18, and 25, Wine assisted Officer Grant with obtaining information and/or evidence against three additional targets in Miami County.

Wine assisted Officer Rebholz with a controlled buy on July 5. Although the target was immediately stopped after the transaction, the buy money was not found. Officer Rebholz suspected Wine had conspired with the target in some way, though he could not prove it. Officer Rebholz did not use Wine as a confidential informant again, but Wine assisted Officer Grant as set out above. Grant was satisfied with Wine's assistance.

On the night of July 18, Wine's probation officer conducted a random probation check

3

at Wine's residence and collected a urine screen. Wine admitted that the screen would come back positive for prescription drugs, which it did. The day following the search, Wine came to the Wabash Police Department and turned in a container holding five unused syringes and three pills. Wine claimed this was what probation was looking for the previous night and admitted that he had placed it in a dumpster.[2]

On or before July 24, 2012, Officer Rebholz determined that he was no longer going to sit on the June 29 arrest. He completed an affidavit of probable cause on July 25, which the prosecutor filed on July 30, along with the criminal information for dealing in a controlled substance. Wine was arrested on August 2 for this charge.

The instant case proceeded to a jury trial on June 11, 2013 and lasted three days. At the onset of trial, Wine sought dismissal based upon his agreement with Officer Rebholz. Following a hearing, the trial court denied the motion to dismiss. The trial court also denied Wine's repeated requests to present the issue to the jury. The jury found Wine guilty as charged, and the trial court sentenced him to eighteen years in prison. Wine now appeals.

1.

Wine initially argues that he received ineffective assistance of trial counsel. He presents this claim on direct appeal, which is generally ill advised.[3] As our Supreme Court

---

[2] As a result of the events on July 18 and 19, new criminal charges were filed on July 30 for unlawful possession of a syringe and unlawful possession of a legend drug, and the State filed a petition to revoke probation on August 14.

[3] A post-conviction hearing is normally the preferred forum to adjudicate a claim of ineffective assistance of counsel. *See McIntire v. State*, 717 N.E.2d 96 (Ind. 1999); *Woods v. State*, 701 N.E.2d 1208 (Ind. 1998). This is so because presenting such a claim often requires the development of new facts not present in the trial record. *McIntire v, State,* 717 N.E.2d 96. Although a defendant may choose to raise a claim of ineffectiveness

4

has explained:

> When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight. It is no surprise that such claims almost always fail.

*Woods v. State*, 701 N.E.2d at 1216 (quoting *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir. 1991)). This is because our review starts with the presumption that counsel rendered adequate assistance and made all decisions by exercising reasonable professional judgment. *Walker v. State*, 843 N.E.2d 50 (Ind. Ct. App. 2005), *trans. denied*.

To prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate both that his counsel's performance was deficient and that he was prejudiced by the deficient performance. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668 (1984)), *trans. denied.* Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.*

Wine's specific claims of ineffectiveness are that counsel failed to spend sufficient time meeting with him to prepare for trial, failed to advise Wine of a plea agreement offered by the State, and failed to file the motion to dismiss prior to trial. Wine has not presented adequate evidence to support any of these claims. With respect to the first two, Wine relies

---

of counsel on direct appeal, if he does so the issue will be foreclosed from collateral review. *Id.*; *Woods v. State,* 701 N.E.2d 1208.

exclusively on his own self-serving statements, yet the trial court expressly found that Wine "[could not] be believed or trusted."[4] *Appellant's Appendix* at 112. Further, counsel indicated to the trial court that he had informed Wine of the plea offer, but "[Wine] consistently told [counsel] that he wasn't interested in a plea." *Transcript* at 225.

Wine claims that counsel should have filed the motion to dismiss before trial "so that Wine could get an advance decision by the trial court on that issue." *Appellant's Brief* at 15. Without this, Wine contends he could not make an informed decision about whether to accept any plea agreement. He cites no authority in support of his argument. Further, because counsel was not called to testify, no record has been developed as to trial counsel's strategy or reasons underlying his decision regarding the timing of the motion to dismiss. *See Villalon v. State*, 956 N.E.2d 697 (Ind. Ct. App. 2011), *trans. denied*. On the record before us, we cannot conclude that trial counsel rendered ineffective assistance. *See Woods v. State*, 701 N.E.2d at 1216 ("[w]here the record is incomplete, the reviewing court is poorly positioned to address the merits").

2.

The next issue centers on the agreement between Wine and Officer Rebholz regarding

---

[4] This finding was entered in another context, the order denying Wine's motion to dismiss, but it is apt here too. In its order the court stated the following regarding Wine's credibility:

> Simply stated, the Defendant will say whatever is necessary, including perjuring himself, to get what he wants. He is damaged goods. The Defendant has been disruptive many times throughout these proceedings and he is upset about his Attorney's performance in this matter. The Defendant has a history of attempting to undermine court appointed attorney(s) and take matters into his own hands. The Defendant has committed perjury. This history and his lack of credibility support prior court rulings in this case and in a related contempt proceeding. He cannot be believed nor trusted. He will sell his soul or anyone else's, to serve his own selfish interests.

*Id.*

filing of the underlying charge. Wine claims that he satisfied his agreement with Officer Rebholz and, therefore, the trial court was bound to grant the motion to dismiss. Moreover, he argues that he should have been allowed to present evidence of this agreement to the jury as a defense.

We quickly dispose of the suggestion that the jury should have played a role in deciding Wine's motion to dismiss. The trial court properly determined that whether the agreement prevented the State from prosecuting the case was an issue to be decided by the court and was not relevant to any factual determinations before the jury. Wine presents no cogent argument to the contrary.[5]

We turn now to the trial court's denial of the motion to dismiss. The State argues initially that Officer Rebholz lacked the authority to enter into an agreement binding the State not to prosecute. We need not, however, decide this issue. Even assuming that the State was bound under the agreement, the trial court did not err in denying Wine's motion to dismiss because Wine "failed to fully live up to his end of the bargain." *Appellant's Appendix* at 111.

Wine acknowledged a number of times at trial that the agreement required him to work with Officer Rebholz for a "long time". *Transcript* at 172, 173, 188. Further, Officer Rebholz testified that in addition to working as a confidential informant, the agreement required that Wine stay off drugs and out of trouble.

Officer Rebholz and Wine entered into the agreement on June 29, 2012. Immediately

---

[5] Wine wrongly analogizes this situation to a claim of self-defense. Unlike a claim of self-defense, determining the effect of the agreement on the State's ability to prosecute requires no determination of facts about the crime itself or whether Wine had a legal justification for committing the crime.

7

thereafter, Wine lied to Officer Rebholz regarding whether there were drugs at the residence he had just left. Over the next couple weeks Wine successfully assisted another officer with a number of targets. The one controlled buy with which Wine assisted Rebholz, however, did not go well and Rebholz suspected foul play due to the missing buy money.

The record reveals that by mid-July Wine "got high" even though he knew he should not have pursuant to the agreement. *Id*. at 199. He also possessed prescription drugs and syringes in violation of the law. Wine had a positive drug screen on July 18 and turned in pills and syringes the following day, ultimately resulting in probation revocation and new charges, respectively.

In less than a month, Wine failed on more than one occasion to comply with the agreement, most notably by breaking the law again. As a result of Wine's noncompliance, Officer Rebholz understandably decided to take the case off the shelf and turn it over to the prosecutor on or about July 25. Under these circumstances, the trial court did not err in denying Wine's motion to dismiss.

3.

Finally, Wine argues that an admission, which he made at trial outside the presence of the jury, should not have been admitted as evidence. The admission occurred after the jury was released on the first day of trial. Wine initiated the following colloquy:

> [Wine]: Your Honor, you know, I apologize. I really do. Uh - -
> [Court]: You did very well this last witness.
> [Wine]: From the outward appearance, thanks for saying that. But on the inside, your Honor, I'm a mess there. Wasn't a whole lot I could do here until the very last minute when I had to say it loud enough for the jury to hear me, "can I borrow your pen," because he took my pen from

me.  I couldn't write questions.

A lot of questions should have been asked of him that wasn't asked.  It's too late now, uh, but I hope that it doesn't continue, Judge.  You know, I'm fighting for my life, Judge.  *I'm not saying I'm innocent, by all means I'm not, I'm guilty as hell.*

[Defense Counsel]:  Bobby - -

[Wine]:        God knows it, you know it, he knows it.  But this should not be happening, Judge.  I don't understand all of the rules of the evidence on how the Court proceeds.  I'm pretty dumb to that, but I'm not retarded, Judge.  They should know the truth.  All I'm asking is an opportunity to let them hear the truth.  Why can't I speak?  Why can't they know the truth on what happened between me and that man?

[Court]:        Well, Mr. Wine, you will - -

[Wine]:        I don't understand.

[Court]:        You will at some point make a decision in conjunction with your attorney as to whether or not you wish to testify.  You absolutely have the right not to do so.  That is a very important tactical decision.  I will give you plenty of time to think that over when the time is appropriate, if I don't grant the motion to dismiss tomorrow, and we get to that length.  This is where we're at right now….

*Transcript* at 94-95 (emphasis supplied).

During Officer Rebholz's testimony on the second day of trial, the State questioned him regarding the admission made by Wine the previous day.  Over Wine's objection, the witness was permitted to testify as follows:  "Mr. Wine, uh, in an excited utterance said, uh, loudly enough for all of us to hear regards to being innocent, I'm by all means not, I'm guilty as hell.  God knows it, he knows it, and you know it."  *Id*. at 158.  Upon Wine's request based on the rule of completeness, a recording of the entire colloquy was then played for the jury.

On appeal, Wine makes a vague claim that allowing the admission to be used as evidence against him violated principles of due process.  He explains, with no citation to authority or the record:

9

> Wine was obviously unstable during his trial, as evidenced by his frequent disruptive comments and activities. It would be fundamentally unfair to allow his comments in response to a judicial observation to be used against him. He was commenting upon his mental status, and was making the trial court aware of the internal struggle he was having. By allowing the statements to be used as evidence, the Court discouraged further truthful comment by Wine that might have led to a less contentious atmosphere during his trial.

*Appellant's Brief* at 22.

Wine's admission was clearly spontaneous and in no way elicited by the trial court or anyone else. Moreover, Wine presents no cogent argument in support of his due process claim that the admission should not have been allowed into evidence. This issue is therefore waived. *See State v. Holtsclaw*, 977 N.E.2d 348, 350 (Ind. 2012) (appellant waived argument by "failing to appropriately develop or support it"); Ind. Appellate Rule 46(A)(8)(a) (requiring conclusions to be "supported by cogent reasoning" and "citations to authorities, statutes, and the Appendix or parts of the Record on Appeal relied on").

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.