## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

John Emry
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

George King,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 17, 2017

Court of Appeals Case No.
49A05-1605-PC-1059

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-0201-PC-3711

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, George King was found guilty and convicted of two counts of attempted murder. The trial court sentenced King to an aggregate sentence of fifty years executed in the Indiana Department of Correction. On direct appeal, we affirmed his convictions. *King v.* State, 799 N.E.2d 42 (Ind. Ct. App. 2003), *trans. denied*, *cert. denied*, 543 U.S. 817 (2004). Thereafter, King filed a petition for post-conviction relief wherein he alleged ineffective assistance of trial and appellate counsel, which the post-conviction court denied. King now appeals, raising two issues for our review: (1) whether the post-conviction court erred in concluding King's trial counsel was not ineffective, and (2) whether the post-conviction court erred in concluding King's appellate counsel was not ineffective. Concluding trial and appellate counsel were not ineffective, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in King's direct appeal:

> King and Kay King ("Kay") are brother and sister. Their father, George King ("George"), was a multimillionaire. In 1999, Kay worked for George's investment company, and he gave Kay power of attorney. King lived with George at his residence in Indianapolis. Kay and King had a strained relationship and often quarreled over who would control George's multimillion-dollar estate after his death.

In the summer of 2000, Kay and King clashed. King yelled, "I'm going to kill you." Dana Miller, George's nursing aid, witnessed part of the fight. Miller heard Kay ask King, "Are you going to shoot me?" Miller saw King nod his head affirmatively and respond, "Yeah."

In October 2001, Kay saw King remove mail from her mailbox. During the same timeframe, one of Kay's neighbors saw King's car stop at Kay's mailbox on numerous occasions. Later, Kay learned that change-of-address orders had been executed with the post office that changed the delivery of her investment and trust accounts to George's address, where King lived.

On the evening of November 14, 2001, Kay's fifteen-year-old son, C.K., drove her home from his confirmation class. C.K. pulled into their garage and turned off the car. As C.K. and Kay sat talking, a man wearing a ski mask and trench coat appeared on the passenger side of the car. He had his right hand covered with a fast-food sack. The man removed the sack and fired a revolver at Kay and C.K. through the passenger window. C.K. was shot twice, in his neck and shoulder. Kay was shot five times; she sustained injuries to her face, shoulder, and hand. C.K. restarted the car and backed out of the garage. The assailant pursued them and continued to fire at Kay and C.K. as they drove away. Kay's neighbors reported seeing a thin man, with a stature similar to King's, wearing dark clothing and running away from Kay's garage that night.

C.K. sought help at a nearby fire station. Firefighters administered medical aid to Kay and C.K. before they were transported to the hospital. When firefighters questioned Kay and C.K. as to the identity of their attacker, they both identified King as the assailant. Marion County Sheriff's Deputy Bradley Beaton interviewed C.K. at the fire station. C.K. told Deputy Beaton that King had shot him and his mother. C.K. said that he recognized King as the assailant because of his eyes, mouth, and

build.  Later at the hospital, Marion County Sheriff's Department Detective John Maloney interviewed Kay and C.K. separately; both identified King as the attacker.

On January 9, 2002, the State charged King with attempted murder, aggravated battery as a Class B felony, battery as a Class C felony, and carrying a handgun without a license as a Class A misdemeanor.  On August 20, 2002, after reviewing Kay's medical records, King moved for a mistrial so that he could investigate whether Kay's identification testimony was a product of hypnosis.  The trial court denied King's motion.  On August 22, 2002, a jury found King guilty on all counts.  The trial court entered judgment of conviction only on the two attempted murder counts.

*Id*. at 45-46 (record citations and footnotes omitted).

[3]    The trial court sentenced King to fifty years on each count of attempted murder, to be served concurrently.  In sentencing King, the trial court found numerous aggravating circumstances, including King's criminal history, King's premeditation in committing the offenses, and C.K.'s young age.  King appealed his convictions, raising five issues for our review.  We affirmed.  *Id*. at 51.  In 2005, King filed a petition for post-conviction relief, alleging ineffective assistance of trial and appellate counsel, which the post-conviction court denied on April 12, 2016.  King now appeals the denial of post-conviction relief.

# Discussion and Decision

# I. Standard of Review

[4] Post-conviction proceedings are not an opportunity for a super-appeal. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post-conviction proceeding. *Id.* A claim of ineffective assistance of appellate counsel is also an appropriate issue for post-conviction review. *Id.* The petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[5] A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we may not reweigh the evidence nor reassess witness credibility; rather we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). We will affirm the post-conviction court's denial of post-conviction relief unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion, will the post-conviction court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E.2d at 469. Finally, we do not defer to the post-conviction court's legal conclusions, but do accept its

factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied,* 540 U.S. 830 (2003).

## II. Ineffective Assistance of Trial and Appellate Counsel

[6] King contends the post-conviction court erred in concluding his trial and appellate counsel were not ineffective. Specifically, he contends trial and appellate counsel rendered ineffective assistance in failing to challenge his sentence on the basis the trial court erred in finding aggravating circumstances not found by a jury beyond a reasonable doubt in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). We disagree.

[7] The standard for ineffective assistance of both trial and appellate counsel is the same. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Id*. at 687. These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Garrett*, 992 N.E.2d at 719. To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Under this standard, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake*, 753 N.E.2d at 603. We recognize a strong presumption counsel rendered adequate legal assistance. *Id*. The defendant must offer "strong and convincing evidence to overcome this presumption." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## A. Trial Counsel

King argues his trial counsel rendered ineffective assistance in failing to object to the enhancement of his sentence based upon aggravators not found beyond a reasonable doubt by a jury. Specifically, King maintains he was sentenced after the United States Supreme Court decided *Apprendi* and trial counsel should have objected to the sentence in light of that case.

In 2000, the Supreme Court held in *Apprendi*, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

*statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Four years later, the Supreme Court interpreted the phrase "statutory maximum" in light of *Apprendi* as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). Then, in 2005, our supreme court was tasked with examining Indiana's sentencing scheme at the time in light of *Blakely*. In *Smylie v. State*, the court noted, "While many who read *Apprendi* deduced that 'statutory maximum' meant 'statutory maximum,' the *Blakely* majority chose to define it as 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" 823 N.E.2d 679, 682-83 (Ind. 2005) (emphasis omitted) (quoting *Blakely*, 542 U.S. at 303), *cert. denied*, 546 U.S. 976 (2005). The court further noted,

> While *Blakely* certainly states that it is merely an application of "the rule we expressed in *Apprendi v. New Jersey*," it is clear that *Blakely* went beyond *Apprendi* by defining the term "statutory maximum." As the Seventh Circuit recently said, it "alters courts' understanding of 'statutory maximum'" and therefore runs contrary to the decisions of "every federal court of appeals [that had previously] held that *Apprendi* did not apply to guideline calculations made within the statutory maximum." *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004) (collecting cases). Because *Blakely* radically reshaped our understanding of a critical element of criminal procedure, and ran contrary to established precedent, we conclude that it represents a new rule of criminal procedure.

*Id.* at 687 (alteration in original) (some citations omitted). Because *Blakely* created a new rule of constitutional criminal procedure, the court stated *Blakely* would apply "retroactively to all cases on direct review at the time *Blakely* was announced," but "a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering." *Id.* at 690-91. Therefore, the court held "a trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a *Blakely* claim before *Blakely* was decided." *Id.* at 690.

[12] Here, King was sentenced in November 2002, after *Apprendi* but years before *Blakely* and *Smylie* were decided. Therefore, King's argument invites us to hold his trial counsel was required to interpret *Apprendi* in a manner that would have predicted the Supreme Court's decision in *Blakely* and our supreme court's decision in *Smylie*. We decline such an invitation and note any objection to King's sentence based on *Apprendi* would not have been sustained in light of the fact *Apprendi* had not yet been interpreted in a manner that would invalidate his sentence. *See Walker v. State*, 843 N.E.2d 50, 59 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1130 (2007). Moreover, our supreme court has made clear, "An attorney is not required to anticipate changes in the law and object accordingly in order to be considered effective." *Id.* (internal quotation marks and citation omitted). We conclude the post-conviction court did not err in concluding King's trial counsel did not render ineffective assistance.

# B. Appellate Counsel

[13] King also argues appellate counsel rendered ineffective assistance in failing to challenge his sentence on direct appeal on the same basis. As noted above, we apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Garrett*, 992 N.E.2d at 719.

> A petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. Our supreme court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.

*Walker*, 843 N.E.2d at 60 (quotations and citations omitted).

[14] Here, we affirmed King's conviction in 2003, our supreme court denied transfer in February 2004, and the Supreme Court decided *Blakely* four months later in June 2004. Similar to above, King's argument invites us to hold appellate counsel was required to interpret *Apprendi* in a manner that would have predicted both the *Blakely* and *Smylie* decisions. However, "'[a]ppellate counsel

cannot be held ineffective for failing to anticipate or effectuate a change in the existing law.'" *Id.* (citation omitted). King's argument fails and we conclude the post-conviction court did not err in concluding King's appellate counsel did not render ineffective assistance.

# Conclusion

[15] The post-conviction court did not err in concluding King is not entitled to post-conviction relief on his claims he received ineffective assistance of trial and appellate counsel. Accordingly, we affirm.

[16] Affirmed.

Kirsch, J., and Barnes, J., concur.